**CF** **CATAFAGO FINI LLP**

*Attorneys at Law*

The Empire State Building
350 Fifth Avenue, Suite 7710
New York, NY 10118

tel: 212-239-9669   fax: 212-239-9688
www.catafagofini.com

November 14, 2019

**Via ECF**
Hon. Sanket J. Bulsara
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Hon. Kiyo A. Matsumoto
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Liu et al. v. Wing Keung Enterprises, Inc. et al.,* 1:18-cv-05044-KAM-SJB
        <u>Letter Motion for Conference</u>

Dear Judge Matsumoto and Magistrate Judge Bulsara:

We represent Defendant Simon Chan in the above-referenced action.  We write on behalf of all defendants in response to the letter filed by Plaintiffs' counsel, Heng Wang, Esq., dated November 13, 2019 (Doc. 53), which included a proposed briefing schedule for his anticipated motion for conditional certification of a collective action.  As explained below, the pending motions to dismiss should result in the opposition briefing for that anticipated motion being stayed pending this Court's ruling on the motions to dismiss, and in any event, we respectfully submit that the Plaintiffs' proposed briefing schedule is too short. We therefore respectfully request a brief conference to discuss these matters.

As Your Honors are aware, the rules requesting proposed briefing schedules, and the practice in this Court, is for the parties to meet and confer, and *jointly* propose a briefing schedule.  This is obvious.  Only if the parties cannot agree on a proposed briefing schedule would the parties take up the Court's time and submit separate proposed schedules.

In this case, for whatever reason, Plaintiff's counsel did not consult with us as to a proposed briefing schedule, and in his unilaterally proposed schedule, provided himself two weeks' time for a reply brief, when the default rule is one week for replies.  *See* Local Rule 6.1.  While Mr. Wang did ask defendants if we would consent to the filing of a collective motion, he did not ask us about a briefing schedule or send us his proposed briefing schedule.  In any event, our position regarding briefing is respectfully set forth below.

First, because there are two pending motions to dismiss (Docs. 38-48), case law in the Second Circuit holds that briefing as to a motion for a collective action should be stayed pending resolution of the motions to dismiss.  *Aleman v. Innovative Elec. Services, L.L.C.*, 2014 WL 4742726, at *1

(S.D.N.Y. Sept. 15, 2014) ("The Court adjourned briefing of [the collective certification motion] pending resolution of defendants' motion to dismiss"). This makes sense, because if the motions to dismiss are even granted in part, this could dramatically affect the scope of the proposed class included in the motion for a collective action.

Second, even when briefing is appropriate, we respectfully submit that the briefing schedule should allow more time to brief the multiple issues involved. Because the defendant corporation employs numerous employees, and this case involves application of the Motor Carrier Exemption to the Fair Labor Standard Act (29 U.S.C. § 213 (b)(1)), which raises individualized issues of an employee's duties and routes, there are powerful arguments that this case is not appropriate for collective treatment. Where, as here, a court would need to make fact intensive inquiries as to individualized issues, courts deny motions for conditional certification. *See e.g.*, *Myers v. Hertz Corporation*, No. 02-cv-4325, slip op. at 9 (E.D.N.Y. May 18, 2006) (Denying motion for conditional certification because "any collective action would require the Court to make a fact-intensive inquiry into each potential plaintiff's employment situation."). A copy of the *Myers* decision denying conditional certification of a collective action because of individualized issues is attached hereto as Exhibit A.

Third, it is important to note that this same plaintiff's law firm, against these same defendants, previously moved in a prior action for collective certification, and the motion was *denied* in a case before Magistrate Judge Lois Bloom and Judge Weinstein. *Chaohui Tang v. Wing Keung Enterprises, Inc.*, 2015 WL 13742378, at *7 (E.D.N.Y. Aug. 7, 2015) ("Plaintiffs' other allegations that defendants maintained a common policy or plan that violated the law are so generalized and vague that on this record, the Court denies the motion for certification of a collective action."). Attached hereto as Exhibit B is a copy of the important *Tang* decision denying certification of a collective action. This prior decision – denying collective treatment – highlights that the briefing for any motion for collective treatment will be somewhat more complicated than in a typical FLSA action.

Given the multiple issues involved, if Plaintiffs elect to make a motion for a collective action at this time then we respectfully submit that, if any of Plaintiffs' claims survive the motions to dismiss, the time for Defendants to submit opposition briefs should be four weeks after the pending motions to dismiss are decided, and the time for Plaintiffs' to submit reply briefs should be four weeks after Defendants' opposition briefs are filed. In any event, we respectfully submit that it would be unfair for the Plaintiffs' proposed briefing schedule to be approved, since Plaintiffs' counsel oddly provided only himself an extra week, after failing to meet and confer with us about a schedule – a rather odd step in this prestigious Court.

Respectfully submitted,

/s/ Tom M. Fini
Tom M. Fini, Esq.

cc:      All counsel of record (via ECF)

2

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JENNIFER MYERS, individually and on behalf
of all others similarly situated,

                                        Plaintiffs,

                    - against -

THE HERTZ CORPORATION, a Delaware
Corporation,

                                        Defendant.
-------------------------------------------------------------X

**APPEARANCES:**

**For the Plaintiff:**
**Abbey Gardy, LLP**
212 East 39th Street
New York, New York 10016
By: Stephen T. Rodd, Esq.
     Stephanie Amin-Giwner, Esq.
     Lidia Kryzaniwsky, Esq.

**Stein Bogot Ltd.**
33 North LaSalle Street, 29th Floor
Chicago, Illinois 60602
By: Robert Stein, Esq.

**For the Defendant:**
**Epstein Becker & Green, P.C.**
250 Park Avenue
New York, New York 10177
By: Kenneth W. DiGia, Esq.

**Constangy Brooks & Smith, LLC**
230 Peachtree Street, N.W., Suite 2400
Atlanta, Georgia 30303
By: Frank B. Shuster, Esq.

**HURLEY, District Judge:**

**To Be Filed Under Seal**

**MEMORANDUM OF DECISION
AND ORDER**
02-CV-4325 (DRH) (MLO)

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  MAY 1 8 2006 ★

LONG ISLAND OFFICE

        Plaintiff Jennifer Myers, on behalf of herself and all others similarly situated

(collectively "Plaintiffs"), moves for an Order, pursuant to 29 U.S.C. § 216(b), granting

Plaintiffs leave to send notice of this action to all potential opt-in plaintiffs. For the reasons that

follow, Plaintiffs' motion is denied.

### BACKGROUND

The background of this case is set forth in this Court's March 15, 2005

Memorandum of Decision and Order (the "March 15, 2005 Order") and March 27, 2006

Memorandum of Decision and Order (the "March 27, 2006 Order"), familiarity with which is

assumed. Thus, the Court will only state the facts necessary for disposition of the instant

motion.

The Hertz Corporation ("Defendant" or "Hertz") operates rent-a-car facilities at

all major metropolitan and regional airports in the United States. Plaintiff Jennifer Myers

("Myers") is employed as a Station Manager at Hertz's Long Island rental operation. On August

1, 2003, she filed this action, on behalf of herself and all current and former Hertz employees

classified as Station Managers, for unpaid overtime pursuant to the Federal Fair Labor Standard

Act ("FLSA") and the New York State Labor Laws. Subsequent to Myers filing this action, four

other Station Managers who worked with her at the Long Island rental operation opted into this

action. Plaintiffs claim that Hertz has improperly labeled them as managers and thus they are not

fairly compensated with overtime pay. Defendant maintains that the duties and responsibilities

of Station Managers clearly establish that they are "exempt managerial employees" who are not

entitled to overtime pay.

In the March 15, 2005 Order, the Court, inter alia, denied Defendant's motion for

summary judgment on Plaintiffs' FLSA claim, finding that there were disputed issues of material

2

fact as to Plaintiffs' exempt status. In the March 27, 2006 Order, the Court granted Defendant's

motion for reconsideration. Upon reconsideration, the Court found that although Defendant had

established that Plaintiffs were salaried employees within the meaning of the relevant exemption,

Hertz had not demonstrated that Plaintiffs were exempt employees as a matter of law because

there were material issues of disputed fact as to whether Plaintiffs' primary duty was managerial.

Accordingly, Defendant's motion for summary judgment on the FLSA claim was denied.

Plaintiffs now seek to expand this suit into a "collective action" as contemplated

by the FLSA. Essentially, they move for an Order directing Hertz to provide the names, last

known addresses, and telephone numbers of all their employees in the Station Manager positions

at any time from August 1, 1999 to the present and authorizing court-approved notice to be

mailed to such individuals to obtain their written consent to join as plaintiffs in this action.[1] For

the reasons discussed below, Plaintiffs' motion is denied.

## DISCUSSION

### I.    *Applicable Legal Principles Under the FLSA*

Section 216(b) of the FLSA provides, in pertinent part, as follows:

> An action . . . may be maintained against any employer . . . by any
> one or more employees for and in behalf of himself or themselves
> and other employees similarly situated. No employee shall be a
> party plaintiff to any such action unless he gives his consent in
> writing to become such a party and such consent is filed in the
> court in which such action is brought.

29 U.S.C. § 216(b). It is well-settled that pursuant to section 216(b), courts have the discretion

to authorize the sending of notice to potential members of a "collective action." *See Mike v.*

---

[1] According to Hertz, from February 16, 2000 to June 2, 2005, a total of 2,285 people
have been employed by Hertz as Station Managers nationwide. (Def.'s Mem. at 2.)

3

*Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 219 (D. Conn. 2003) (citations omitted); *see also Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 WL 2000133, at *13 (S.D.N.Y. Aug. 17, 2005) ("A court has the discretion to authorize notification to 'similarly situated' potential plaintiffs and to direct an employer defendant to disclose the names and addresses of those parties.").

Unlike a class action pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), section 216(b) requires that employees affirmatively opt-in to an FLSA collective action by filing a written consent. *See id.*; *see also Morales v. Plantworks, Inc.*, No. 05 Civ. 2349, 2006 WL 278154, at *1 (S.D.N.Y. Feb. 2, 2006); *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 WL 3240472, at *4 (S.D.N.Y. Nov. 30, 2005). Moreover, the requirements of Rule 23 do not apply to the approval of a collective action and, therefore, no showing of numerosity, typicality, commonality, and representativeness need be made. *Id.* "Rather, in deciding whether to authorize a collective action notice under the FLSA, the only issue for the Court is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" *Id.* (citations and internal quotation marks omitted); *see also Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 266-67 (E.D.N.Y. 2005) ("The threshold issue in deciding whether to authorize such opt-in notice is to determine whether other employees to whom such notice might be sent are 'similarly situated.'") (citation and internal quotation omitted).

Neither the FLSA nor its implementing regulations define "similarly situated." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997). In this Circuit, "courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Id.*; *see also Braunstein v. Eastern Photographic Labs, Inc.*, 600 F.2d

4

335, 336 (2d Cir. 1978) (noting that court's authority to send notice to "similarly situated" employees "comports with the broad remedial purpose of the Act, which should be given a liberal construction, as well as with the interest of the courts in avoiding multiplicity of suits"); *Morales*, 2006 WL 278154, at *2 (applying above definition of "similarly situated"); *Mazur*, 2005 WL 3240472, at *4 (same); *Patton*, 364 F. Supp.2d at 267 (same).

Courts typically employ a two-part process in certifying a collective action. *See, e.g., Flores v. Osaka Heath SPA, Inc.*, No. 05 Civ. 962, 2006 WL 695675, at *2 (S.D.N.Y. Mar. 16, 2006). Once a court finds that the putative plaintiffs are similarly situated to the named plaintiffs, the court conditionally certifies the class and permits notice to be sent to the proposed plaintiffs. *See id.*; *Morales*, 2006 WL 278154, at *1. During the second stage, the employer can move to decertify the class if discovery reveals that the plaintiffs are not similarly situated. *See, e.g., Flores*, 2006 WL 695675, at *2; *Morales*, 2006 WL 278154, at *1; *Patton*, 364 F. Supp. 2d at 268.

**II.    *The Station Managers are not Similarly Situated***

Plaintiffs' motion is premised upon a uniform Hertz policy, viz. Corporate Policy 2-50, pursuant to which all Station Managers have been classified as exempt employees who are not entitled to overtime. The policy provides as follows:

<u>Exempt Employees</u>

The 1938 Fair Labor Standards Act establishes employees performing the following general classes of duties as EXEMPT from provisions of statutes governing minimum wages and overtime.

1.    Executive Employees - Those whose work is essentially supervisory and who meet the following criteria:

5

    a.      Basic salary of at least $155 weekly ($335.84 semi-monthly) and

    b.      Manage the Company or any recognized branch, department, or subdivision thereof, and

    c.      Customarily and regularly direct the work of two or more employees, and

    d.      Have authority to hire or fire or make authoritative recommendations with respect to hiring, firing, advancement or any other change of status of employees, and

    e.      Customarily and regularly use discretion and judgment in the performance of their work, and

    f.      Devote less than 20% of hours worked in the work week to activities which are not closely related to the performance of work described above.

NOTE: An employee with a basic salary of not less than $250 weekly, ($541.67 semi-monthly) whose primary duty consists of the management of the enterprise in which he/she is employed, or of a recognized department, branch or subdivision thereof which includes the customary direction of the work of two or more other employees, is considered an EXEMPT employee.

(Aff. of Stephen T. Rodd, dated May 6, 2005, Ex. A.)[2]

        Plaintiffs argue that because Hertz improperly classifies *all* of its Station

Managers as exempt pursuant to Corporate Policy 2-50, based on their job title alone, without

regard to any variations in their job responsibilities, all Station Managers are similarly situated.[3]

Defendant does not dispute that it classifies all Station Managers as exempt pursuant to

Corporate Policy 2-50, nor that it does not inquire into the day-to-day activities of its Station

---

    [2] The parties agree that Corporate Policy 2-50 is merely a recitation of the regulatory requirements for establishing exempt status.

    [3] Plaintiffs' argument concerning Hertz's Uniform Attendance Policy will not be addressed as the Court has already found that Plaintiffs' compensation is not "subject to reduction" pursuant to this policy and the applicable regulation.  (*See* Mar. 27, 2006 Order.)

6

Managers to determine whether they actually perform tasks commensurate with the test articulated in this policy prior to their classification.[4]  Nonetheless, Hertz contends that Plaintiffs have failed to establish that the proposed plaintiffs are similarly situated.

First, Hertz argues that Plaintiffs have not proffered any evidence that the day-to-day activities of Station Managers at *other airports* fail to satisfy Corporate Policy 2-50; rather, Plaintiffs only allege that *they* did not perform such exempt activities and that their experiences may be representative of other Station Managers' experiences.  Hertz further maintains that Plaintiffs have failed to submit any evidence of an unlawful policy or scheme on Hertz's behalf to evade the FLSA by misclassifying the Station Mangers as exempt.  Thus, Hertz contends, Plaintiffs fail to support their claim with any factual showing that extends beyond their own circumstances.

Moreover, Hertz argues that any analysis into the similarity between Plaintiffs and proposed plaintiffs would necessarily require "an individualized and fact intensive inquiry with respect to each Plaintiff, as well as each and every putative class member, and is [therefore] not suitable for resolution in a collective action."  (Def.'s Mem. at 8.)  The Court will address Hertz's arguments in turn.

With respect to the limited nature of Plaintiffs' evidence, on February 28, 2003, the parties entered into a stipulation before Chief Magistrate Judge Michael L. Orenstein that

---

[4]  Apparently, this is because Hertz believes that any variations do not ultimately affect the Station Managers' exempt classification as their primary duty is to oversee the rental operation.  (*See* Def.'s Mem. at 11.)  Hertz does contend, however, that Station Managers are subject to annual review and that if it is determined that any Station Managers are not performing their managerial duties, they are given a warning and perhaps even fired.  (*Id.* at 13-14.)

Plaintiffs would not conduct discovery at Hertz locations other than the Long Island operation, until after this Court's denial of Hertz's summary judgment motion, should such occur, in exchange for Hertz tolling the limitations period as to potential opt-in plaintiffs. (*See* Aff. of Stephanie Amin-Gwiner, dated June 30, 2005, Ex. A.)  Plaintiffs were permitted, however, to request "documents maintained at Hertz's corporate or regional locations pertaining to union grievances, administrative agency proceedings and state and federal court litigation for the past 3 years alleging that Hertz has failed to pay overtime to [Station Managers]." (*Id.*)  On March 15, 2005, this Court denied Hertz' summary judgement motion.[5]  Thereafter, Hertz renewed its argument that Plaintiffs should first satisfy their threshold obligation regarding opt-in certification before embarking on nationwide discovery.  After a conference before Judge Orenstein, the parties again agreed to hold such discovery in abeyance and Hertz consented to continue to toll the statute of limitations until this Court rendered its decision on the present motion.

Based on the above, it is undisputed that thus far, and pursuant to stipulation between the parties, discovery has been limited to the Long Island operation with the exception of grievances, agency action, and litigation.  Plaintiffs therefore claim that they should not be prejudiced for failing to come forward with information related to the putative plaintiffs as they were precluded from obtaining such discovery via stipulation.  Hertz counters, however, that the discovery stipulation in no way limited Plaintiffs' ability to perform their own investigation, i.e., obtain affidavits from other current or former Station Managers, and that they were in fact

---

[5] Although the Court changed this decision in part upon reconsideration, Hertz's motion for summary judgment remains denied. (*See* March 27, 2006 Order.)

prompted to do by Judge Orenstein. (*See* Dec. 4, 2002 Tr.)

Although Defendant is correct that Plaintiffs' evidence is limited to the Hertz policy and Plaintiffs' own circumstances, given the stay on nationwide discovery, the Court is not persuaded that this is reason alone to deny the present motion. At this juncture in the litigation, the Court is merely required to make a preliminary finding that the proposed plaintiffs are similarly situated. As discussed above, such a finding may be revisited if it later appears, after appropriate discovery, that the putative plaintiffs who opt to join in the lawsuit are not, in fact, similarly situated. *See, e.g., Patton*, 364 F. Supp. 2d at 268. Under such circumstances, the Court could decertify the collective class.

Nonetheless, the Court finds that Plaintiffs' motion suffers from a fatal flaw that further discovery cannot cure: because liability as to each putative plaintiff depends upon whether that plaintiff was correctly classified as exempt pursuant to Corporate Policy 2-50, any collective action would require the Court to make a fact-intensive inquiry into each potential plaintiff's employment situation. Thus, regardless of the possibility that other Station Managers are improperly being classified as exempt pursuant to Corporate Policy 2-50, any determination as to their right to overtime would require a highly individualized analysis as to whether the duties they performed fell within that exemption. Many courts, both in this Circuit and elsewhere, have declined to find potential plaintiffs similarly situated where liability depends upon such an individualized determination. *See, e.g., Reich v. Homiew Distrib. Co.*, 362 F. Supp. 2d 1009, 1013 (N.D. Ind. 2005) ("[I]f this matter proceeds as a collective action, it will be impossible to come up with a class-wide determination on liability.") (internal quotation marks and citation omitted); *Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1275 (M.D. Ala. 2004)

("[T]he court is not satisfied that conditionally certifying a nationwide collective action, or even a regional collective action, will partake of the economy of scale envisioned by the FLSA collective action procedure" due to individualized nature of claims); *Mike*, 274 F. Supp. 2d at 220-21 ("Because the proof in this case is specific to the individual, [plaintiff] has not provided evidence of a common thread binding his proposed class of employees."); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002) ("[A collective] action dominated by issues particular to individual plaintiffs can not be administered efficiently because individual issues predominate over collective concerns.").

Accordingly, the Court finds that Hertz's decision to classify all Station Managers as exempt is insufficient to warrant certification of a collective action; the merits of any proposed plaintiff's claims will turn upon evidence relating to that individual's day-to-day tasks, and not Corporate Policy 2-50.

## CONCLUSION

For all of the above reasons, the Court finds that Plaintiffs have failed to demonstrate that the putative members of the collective action are similarly situated. Accordingly, Plaintiffs' motion is denied.

**SO ORDERED.**

Dated: May 18, 2006
    Central Islip, New York

                                 /s_____
                                 Denis R. Hurley,
                                 United States District Judge

# EXHIBIT B

2015 WL 13742378
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

CHAOHUI TANG, Jianlin Li, Qingze
Liu, on Behalf of Themselves and All
Others Similarly Situated, Plaintiffs,
v.
WING KEUNG ENTERPRISES,
INC. and Keung Chang, Defendants.

14 CV 390 (JBW)(LB)
|
Signed 08/07/2015

**Attorneys and Law Firms**

Heng Wang, Bo Chen, Heng Wang & Associates, P.C., New York, NY, for Plaintiffs.

Michael D. Cassell, Hogan & Cassell LLP, Jericho, NY, for Defendants.

**ORDER**

LOIS BLOOM, United States Magistrate Judge

I. Procedural History
 **\*1**  Plaintiffs, on behalf of themselves and all others similarly situated, bring this action alleging that their former employer, Wing Keung Enterprises and Keung Chang, ("defendants"), violated their rights to receive minimum wage and overtime pay pursuant to the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). As defendants contend that they are exempt under the Motor Carrier Act (MCA), the parties conducted discovery specific to that issue. Following discovery on the applicability of the Motor Carrier Act exemption, defendants moved for summary judgment. In addition to arguing that they are exempt under the MCA, defendants argue in the alternative that they are entitled to summary judgment because they paid plaintiffs minimum wage and overtime in accordance with the FLSA and NYLL. To support this argument, defendants' motion for summary judgment included payroll and time sheet records. Defendants claim that prior to November 2010, employees clocked in and out with a Lathem badge scanner and pin entry system. From November 2010 onwards, employees clocked in and out with a biometric recognition system, first using a

Lathem Fingerprint Scanner and later using a Lathem Facial Recognition Time Clock. (Defs. Aff. in Opp. to Pls.' Mot. for Cert. of a Collective Action at ¶ 43; ECF No. 42, p. 9.) [1] In plaintiffs' opposition to the motion, they alleged that the records defendants relied upon were falsified. Presented with this dispute, defendants' motion for summary judgment was held in abeyance and Judge Weinstein referred the case to me to address both plaintiffs' claim that the records were falsified and plaintiffs' motion for a collective action.

Plaintiffs move for conditional certification of a FLSA collective action and defendants oppose the motion. Plaintiffs' allegation that defendants falsified or failed to accurately keep time records is central to the motion for certification. Plaintiffs argue that the proposed class members were similarly situated "because the defendant had and continues to have the policy of requiring all employees to perform job duties over 60 hours while, at the same time, systematically failed to record those hours and pay overtime wages." Pls. Memo of Law, p. 3 (ECF No. 39). "[A]ll plaintiffs testified that the defendants had the policy systematically [sic] not recording all employees' overtime work hours after 4:30 p.m." Pls. Reply, p. 5 (ECF No. 45). "[The defendants' records] evidence that either the defendants falsified those records or failed to accurately keep [sic] the overtime hours." Id. at p. 6. "[E]ither the defendants falsified those records or failed to accurately record the hours." Id. As plaintiffs' allegation that defendants falsified the time records is central to plaintiffs' claim that the Court should certify a collective action, the Court held an evidentiary hearing.

II. The Evidentiary Hearing [2]
 **\*2**  At the hearing, plaintiffs first called Kong Jun to testify. Jun's testimony undermined the plaintiffs' contention that employees were prevented from clocking out themselves. Jun also testified that the machine to punch in and out was mounted "on a wall" outside the office door, which conflicted with the other witnesses' testimony regarding where the clock was located. (Tr. 24-24). [3] He testified that the entire time he worked at Wing Keung, he "punched in" when he arrived and "punched out" when he left using a fingerprint machine:

>    THE COURT: So when you got there, that's the first thing that you did? When you got there in the morning at 6:00 a.m?

Chaohui Tang v. Wing Keung Enterprises, Inc., Slip Copy (2015)

THE WITNESS: Yes, I go in the office door, the company door. The office is right next to it so I go there and punch in.

THE COURT: And when you left, you did the same thing to leave?

THE WITNESS: Yes.

THE COURT: And that was the way it was all of the months that you worked there?

THE WITNESS: Yes.

THE COURT: And you always punched in and punched out?

THE WITNESS: Correct.

(Tr. 24.)

Jun stated that the system "started as a fingerprint, and later on [the employer] took a picture even." Plaintiff Jun testified that generally "[defendants] wouldn't give [employees] time to eat" even though defendants' time records deducted a thirty minute meal break. (Tr. at 28.) However, Jun later stated that sometimes he would eat "on the outside" and sometimes he would "take a moment to eat on the premises." (Tr. at 29.)

Unlike Jun, plaintiff Tang testified that he was unable to clock out at the end of the day. His testimony conflicted with Jun as he stated that the machine was never mounted on the wall and that "somebody" would remove the machine:

MS. YOU: Was the time machinery movable?

TANG: Right.

MS. YOU: Was the machine ever mounted on the wall?

TANG: No.

MS. YOU: Who would remove that machine back?

TANG: Somebody at the office.

(Tr. at 35.) Tang described the machine as being on "a table right outside the window of the office." (Tr. at 56.)

Tang later testified, albeit in a convoluted manner, that when he went to "Buffalo" the first year that he worked, he would

come back late and was unable to clock out for himself. [4] (Tr. 55-56.) He testified that in the second year that he worked for defendants, he was generally able to clock himself out when he returned from a delivery route. (Tr. at 56.) Tang testified that he didn't know what his time sheets or pay stubs stated. Further, he testified that he "couldn't get paid unless [he] signed for it even if [the records] were fake." (Tr. at 57.) He again reiterated that if he did not sign, he would not get paid. However he did not testify that anyone ever refused to pay him or that anyone ever said he would not be paid if he did not sign:

MS. SPINELLI: Did you ever have a conversation with anyone? Did anybody ever refuse to pay you if you didn't sign it?

TANG: No, but I would not have tried it anyway.

(Tr. at 58.)

**\*3** Tang also testified that when he signed papers to get paid each month, he would sign off on five pages of documents. None of these documents were given to him in Chinese. (Tr. at 42-43.) [5] Plaintiff Li's testimony came closest to supporting plaintiffs' argument that the records were falsified. Li testified that it was "very seldom" that he arrived back before 4:00 p.m., even though the time records showed Li finishing work before 4:00 p.m. on several occasions. (Tr. at 97.) Li also testified that employees would use the machine to clock out only "[i]f it's there" and that "[s]ometimes when it's very late.... [defendants] took [the machine] in." (Tr. at 99.) Li further testified that he was never told how much he was going to be paid by the hour. That part of Li's testimony was consistent with the other plaintiffs' testimony by plaintiffs that they were told a set figure they would be paid each month – starting with $2,800 for the first month and increasing by $100 for subsequent months. [6] However, Li never saw someone remove the machine to clock out. He did not testify with any particularity about being unable to clock out.

He did not give the name of a specific individual who told him he could not clock in or out. Simon Chan, the general manager of Wing Keung, was called by plaintiff and questioned by both parties. He testified that the fingerprint procedure to clock in and out was in use since about 2010. (Tr. at 71.) The machine was movable, but was kept outside the office door on a counter. (Tr. at 72-73.) He testified that employees clocked themselves in and out, unless they forgot or were on

an overnight trip. In those instances, he would manually input the time, which the Lathem system reflects by displaying a plus sign (+) next to that entry on the time sheet. (Tr. at 77-79.) Chan testified that he would input the time based either on a cover sheet filled out by the driver recording the start and stop times during the trip, or, if the driver had clocked out, he would use that time to manually clock out the worker who had accompanied the driver on that particular delivery route:

> *4 THE COURT: And if they gave you that cover sheet, you would input that time for both the driver and for the person who loaded the truck who was not the driver?
>
> THE WITNESS: Not both the driver. Just only if they didn't punch out themselves.
>
> THE COURT: If the driver didn't punch out or if the assistant like these gentleman?
>
> THE WITNESS: Anybody. If the driver didn't punch out or the assistant.
>
> THE COURT: So you used the cover sheet to put a punch-out time?
>
> THE WITNESS: Yes.
>
> THE COURT: And so, it [+] was an override for the identification system that you had?
>
> THE WITNESS: No, only when it was blank.
>
> THE COURT: Excuse me.
>
> THE WITNESS: It's an override. Because if it's blank it would show a question mark instead, so I would have to manually input the time.
>
> THE COURT: And so, how often did you have to manually input time?
>
> THE WITNESS: It really depends. Sometimes. Maybe sometimes a lot of drivers keep forgetting when they punch out. Sometimes they forget in the morning too.

(Tr. 70-71.)

Li's testimony, while much different than Chan's, acknowledged that the drivers did carry some sort of cover sheet with them but stated that it was not something the drivers filled out when they returned:

> THE COURT: And how about a cover sheet? He said that there were drivers who would fill out a cover sheet, so that if you got back too late....
>
> THE WITNESS: Yeah, that's not something we fill out when we come back. It's a sheet that they gave us when we departed. Like the invoice. Together with invoice [sic], it was given to us.

(Tr. 100-101.)

### III. The Legal Standard

The FLSA puts the burden on the employer to keep accurate time records. 29 C.F.R. § 211(c). "When an employer has kept proper and accurate records, the employer may easily discharge his burden by securing the production of those records." Anderson v. Mt. Clemens, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds,* Integrity Staffing Solutions, Inc. v. Busk, U.S., 135 S. Ct. 513 (2014). Conversely, when an employer has "inaccurate or inadequate" records, the plaintiff "has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produced sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Mt. Clemens, 328 U.S. at 687 (1946). Courts have held that at this stage, it is possible for plaintiff to meet the burden by relying on his recollection alone. Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011) ("It is well settled among the district courts of this Circuit, and we agree, that it is possible for a plaintiff to meet this burden through estimates based on his own recollection.").

Defendants here have produced time sheets which they contend are "proper and accurate records" in order to discharge their burden. Plaintiffs allege that the records are falsified – i.e., that they are "inaccurate or inadequate records." If defendants' records are accurate, they have discharged their burden under the FLSA. The question here is whether plaintiffs' testimony is sufficient to establish that defendants' records are inaccurate.

Courts within this Circuit have grappled with this question in the specific context of when an employee testifies that the employee herself falsified time sheets at the direction of the employer. In Seever v. Carrols Corporation, plaintiffs alleged that defendants told them to work "off the clock" hours in addition to the regular hours recorded on their

Chaohui Tang v. Wing Keung Enterprises, Inc., Slip Copy (2015)

timesheets. 528 F. Supp. 2d 159 (W.D.N.Y. 2007). Plaintiffs alleged defendants directed them not to record those hours on their timesheets, over which plaintiffs had control. Plaintiffs argued that the Anderson burden of proof should apply and that the district court should find their recollection as sufficient *prima facie* proof of uncompensated hours worked. The court rejected plaintiffs' argument, stating, "[i]f the Court were to accept plaintiff's argument, any plaintiff wishing to take advantage of the lesser burden of proof offered by Anderson need do nothing more than fabricate an admission that he 'lied' on his time records, thereby rendering the employer's FLSA-compliant records useless and the employer, through no fault of its own, defenseless to refute the employee's 'recollection.' " The Seever court relied heavily on the fact that the inaccuracies were "self-created" by plaintiffs in coming to its conclusion that plaintiffs were not entitled to the lesser burden of proof under Anderson. However the Court went on to hold that even affording plaintiffs the lesser burden under Anderson, they were unable to rebut defendants' evidentiary showing which negated any "just and reasonable inference" that they worked uncompensated hours off the clock.

 *5  The Second Circuit questioned the reasoning of Seever in Kuebel v. Black & Decker Inc., 643 F.3d 352 (2d Cir. 2011). The plaintiff in Keubel alleged that he only recorded forty hours per week on his timesheets at the specific direction of his supervisors, who were aware he was working overtime hours for which he was uncompensated. The district court, relying heavily on Seever, granted summary judgment for defendants on plaintiff's off-the-clock claims since any inaccuracies in his timesheets were admittedly "self-created." The Second Circuit reversed, holding that plaintiff was entitled to the lesser burden of proof set forth by Anderson. In the Circuit's view, plaintiff "presented sufficient evidence for a reasonable jury to conclude that he has shown the amount of his uncompensated work 'as a matter of just and reasonable inference.' " Kuebel, 643 F.3d at 364 (quoting Anderson, 328 U.S. at 687). The Kuebel decision was silent on when, if ever, a plaintiff would not be entitled to the lesser burden of proof set forth under Anderson because the employer has in fact come forward with accurate and complete records.

Anderson itself contemplates that there must be a way for a defendant to "easily discharge its burden" by producing accurate and complete records. In such a case, plaintiff would not be entitled to the lesser burden of proof. Kuebel recognizes that a plaintiff's own testimony may be sufficient to challenge the accuracy of the records.

However, in the present case, the plaintiffs' testimony was not sufficient to establish that the defendants' records were falsified, inaccurate, or incomplete. Unlike in Seever and Kuebel, where plaintiffs were responsible for manually recording their own hours, defendants here did not delegate the duty to plaintiffs to manually record overtime hours. Rather, defendants' records were generally produced from a sophisticated Lathem fingerprint scanner; times were only manually entered when employees forgot to clock in or out or were on delivery routes that kept them overnight. Therefore, under these circumstances, and in light of the inconsistencies in plaintiffs' testimony, plaintiffs have not established that the records are inaccurate or incomplete. Thus, plaintiffs here are not entitled to the lesser burden of proof set forth in Anderson.

However, even assuming that plaintiffs' testimony was sufficient to question the accuracy of defendants' records here, plaintiffs' testimony fails to meet even the lesser burden under Anderson. "[Anderson] requires the plaintiff in a falsified records case to present a *prima facie* case as to the unpaid overtime hours worked before the burden of proof shifts to the defendant..... [T]his burden must be met individually by each plaintiff in a case such as this where differing work situations make pattern evidence unpersuasive." Murray's v. Stuckey's, Inc., 939 F.2d 614, 621 (8th Cir. 1991). Under Anderson, plaintiffs must establish "as a matter of fair and reasonable inference" that they worked hours they were not compensated for. Plaintiffs' testimony here, even taken collectively and allowing the most generous inferences, fails to meet that burden. As discussed below, some of defendants' practices raise the Court's concern. However, unlike Kuebel, or even Seever, plaintiffs' testimony here was extremely general. Plaintiffs did not testify to any specific inaccuracies in the records or to any individual's conduct to establish that the records were falsified. Moreover, the three plaintiffs testified inconsistently and did not establish as a matter of fair and reasonable inference that they worked hours they were not compensated for.[7] None of plaintiffs' witnesses testified that a specific individual told them they could not clock out or instructed them to clock out early. No witness testified to a specific date that the time records were inaccurate or how often the time clock was moved. Nor did any plaintiff testify to a particular day or week during which they worked hours which they were not paid for. Based on the testimony presented, plaintiffs have not presented a *prima facie* case that they worked unpaid overtime hours for which they were not compensated. As plaintiffs failed to make this threshold showing, the burden does not shift to the defendant. On this

record, there is no basis to discredit the time records presented by defendants.

*6 This is not to say that the defendants' pay practices make sense to the Court or are in full compliance with the law. While plaintiffs presented no specific testimony to support the allegation they were unable to clock in and out, plaintiffs did consistently testify that they were paid a single straight wage per month.[8] There was also testimony that a portion of employees' wages was provided by check and a portion was given in cash. Taken as true, the Court has no explanation for why employees were required to clock in and out if they were paid a straight monthly wage not tied to the hours they worked each week.[9] However, even though defendants' pay practices may raise questions, plaintiffs' testimony that they were on occasion unable to record the time they clocked out does not establish that defendants fabricated or falsified the records.[10]

IV. Plaintiffs' Motion for Certification of a Collective Action
Plaintiffs seek conditional certification as a collective action pursuant to 29 U.S.C. § 216(b). The FLSA provides in pertinent part that:

> An action ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

*7 29 U.S.C. § 216(b). The "certification" of a FLSA collective action "is only the district court's exercise of the discretionary power, upheld in [Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165 (1989) ], to facilitate the sending of notice to potential class members." Myers v. The Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010). "[U]nlike class certification under Fed. R. Civ. P. 23, no showing of numerosity, typicality, commonality and representativeness need be made for certification of a representative action."

Cuzo v. Orion Builders, Inc., 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007) (citation and internal quotation marks omitted).

Courts within this Circuit apply a two-step process to determine whether an action should be certified as a FLSA collective action. See Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 367-68 (S.D.N.Y. 2007). "The first step is the notice stage in which the court determines, based on plaintiffs' pleadings and affidavits, whether the plaintiffs and potential opt-in plaintiffs are sufficiently 'similarly situated' to issue notice and allow the case to proceed as a collective action through discovery." Lynch, 491 F. Supp. 2d at 368. "During the second stage, the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated." Id. "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555.

Plaintiffs' motion concerns the first step of the process. At this stage, plaintiffs' burden is "minimal." Lynch, 491 F. Supp. 2d at 368. "[P]laintiffs need only make a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.' " Doucoure v. Matlyn Food, Inc., 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting Hoffman v. Sbarro, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ). "[T]he court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Lynch, 491 F. Supp. 2d at 368. "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat.... certification." Id. at 369 (citation omitted). However, "[t]he modest factual showing cannot be satisfied simply by unsupported assertions." Myers, 624 F.3d at 555 (internal quotation omitted). "[I]t should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* "similarly situated" plaintiffs do in fact exist." Id.

Despite the low threshold, plaintiffs have not met their modest factual showing that plaintiffs and potential opt-in plaintiffs are sufficiently similarly situated. Plaintiffs' motion for certification of a collective action centers on the allegation that plaintiffs were similarly situated as they were subject to the "common policy" of being unable to clock out since defendants consistently made the machine inaccessible. In order to support this argument, plaintiffs dispute the validity of time records produced by defendants, which defendants

contend are complete and accurate. Plaintiffs have not established that defendants' records were falsified. Plaintiffs' other allegations that defendants maintained a common policy or plan that violated the law are so generalized and vague that on this record, the Court denies the motion for certification of a collective action. As I find that plaintiffs have not met the minimal burden to certify a collective action, I do not address the parties' other disputes regarding the definition of the proposed class. [11]

**\*8** The Court shall hold a status conference in this action on September 3, 2015 at 9:30 a.m. in Courtroom 11A South. The parties are strongly urged to discuss settlement.

SO ORDERED.

**All Citations**

Slip Copy, 2015 WL 13742378

Footnotes

1     Lathem is the name of the company that creates the time clock system. See http://www.lathem.com/.

2     The hearing was slow and difficult. While the need for interpretation of the proceeding slowed things a bit, the real source of the difficulty was that plaintiffs' counsel was utterly unprepared for the hearing, as were her clients. Counsel had been specifically instructed that the purpose of the hearing was to address the claim that the time records had been falsified. However, from the start, plaintiffs' counsel was unable to formulate questions to elicit the most basic facts, such as how long the plaintiffs worked at the defendants' company, what hours they worked, and how they were paid. Plaintiffs' counsel took several minutes between questions and instead of asking the witnesses questions, she frequently testified herself, resulting in objections from defendants' counsel and the Court's intervention. The Court took a break to allow counsel to prepare herself and her clients; however that did little to focus the examination. As counsel was struggling, the Court questioned the witnesses.

3     "Tr." refers to the transcript of the hearing. (ECF No. 48.)

4     Defendant's counsel attempted to elicit testimony to show that Tang may have been mistaken and that he actually made deliveries to Binghamton, not Buffalo. Later, Simon Chan, defendants' manager, testified that the company does not deliver to any clients in Buffalo but does have a delivery route to Binghamton. Regardless of whether the delivery route was to Binghamton or Buffalo, New York, Tang testified that when he went on trips that had him return late in the evening, he was unable to clock out when he returned.

5     As these documents were provided to the employees at the time they were paid, Tang is describing pay stubs. The FLSA requires that an employer keep and preserve payroll records. See generally 29 C.F.R. § 156.2. The FLSA does not require that an employer provide pay stubs to employees. See also "elaws – Fair Labor Standards Act Advisor." United States Dep't of Labor. www.dol.gov/elaws/faq/esa/flsa/018.htm (last visited July 23, 2015) ("[T]he FLSA does not require an employer to provide employees pay stubs."). New York Labor Law does require that an employer provide employees with a pay stub listing "hours worked, rates paid, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages." 12 N.Y.C.R.R. 146-2.3. The New York Wage Theft Prevention Act requires that *at the time of hire*, an employee must give written notice of the employee's rate of pay in English and his primary language (if the New York DOL offers a translation). See "Fact Sheet." New York State Department of Labor: Wage Theft Prevention Act. https://labor.ny.gov/formsdocs/wp/P715.pdf (last visited July 23, 2015). The law does not require employers to provide pay stubs in the employee's primary language.

6     On cross-examination, defendants' counsel elicited that Li and Tang were fired by defendants, allegedly for stealing from the company. (Tr. at 102.)

7     The Court has taken the difficulties posed by the language barrier into account. None of the plaintiffs speak English and all testified with the assistance of an interpreter. But even crediting plaintiffs' testimony as generously as possible and being cautious regarding misunderstandings due to language, plaintiffs' testimony still does not meet the lesser burden set by Anderson.

8     For example, Jun testified that he made $1,500 the first month he worked for defendants, $1,600 the second month he worked for defendants, with an increase of $100 each month. He testified his pay was not connected to his hours. (Tr. 10-11). Defendants' own witness, Mr. Xu, testified that employees were paid monthly because they "preferred" to be paid one time per month. Xu claimed that the employees were paid by the hour but Xu was unsure what his hourly rate was and his testimony also questions whether the employees' wages are in fact tied to the hours they worked:

        THE COURT: You're paid monthly. What are you paid monthly?

Chaohui Tang v. Wing Keung Enterprises, Inc., Slip Copy (2015)

> THE WITNESS: 2,900. Later on increased to 3,000.
>
> THE COURT: And did that change?
>
> THE WITNESS: No.
>
> THE COURT: So it was 2,900 a month and then it was later 3,000 a month?
>
> THE WITNESS: Correct.
>
> THE COURT: And it didn't matter how many hours?
>
> THE WITNESS: Sometimes, you know, we conducted, occasionally, we will be earlier or later we get a little bit extra.
>
> THE COURT: Were you ever told what you were paid per hour?
>
> THE WITNESS: Yes. They would pay according to the legal – the law.
>
> THE COURT: So what is that? What do you get per hour?
>
> THE WITNESS: I was getting a little bit over $9 or so.

(Tr. 108-109).

Nevertheless, while the defendants' pay practices may raise questions, plaintiffs brought their motion on the basis that the defendants records were falsified because plaintiffs were physically prohibited from clocking in and out by the removal of the machine. At this time and on this record, the Court does not find the plaintiffs' testimony sufficient to conclude that plaintiffs were prohibited from clocking in and out.

9   While there was testimony that employees were docked pay if they were late (Tr. at 81), the employees testified they were paid monthly and the amount they were paid was not based on the hours they worked.

10  In plaintiffs' motion for certification of a collective action, they again allege they were paid a flat rate wage "regardless of whether they actually worked over 60 hours or not." (ECF No. 39 at p. 4). Plaintiffs all make this allegation in their supporting declarations. Yet, plaintiffs again do not state how frequently they each worked more than 40 hours per week but were not paid for overtime. All plaintiffs generally assert they "regularly" worked approximately 70 hours a week but were only paid a flat rate. The only finding the Court makes with respect to this allegation is that plaintiffs' extremely general assertions, in light of defendants' records, do not, without more, satisfy plaintiffs' lesser burden under Anderson.

11  The denial of plaintiffs' motion for a collective action is without prejudice. Ms. You no longer represents plaintiffs. It is possible that plaintiffs could replead specific facts to satisfy their burden that defendants maintained a common policy or plan that violated the law.

---

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.